**Gustav NILSEN, Plaintiff,**

v.

**REINAUER TRANSPORTATION CORP., Defendant.**

**Civ. No. 13211.**

United States District Court
E. D. New York.
March 20, 1957.

Klein & Ruderman, New York City, for plaintiff, by James Forsyth, New York City, of counsel.

Macklin, Speer, Hanan & McKernan, New York City, for defendant, by Martin J. McHugh, New York City, of counsel.

RAYFIEL, District Judge.

The plaintiff, a seaman, sues under the Jones Act, 46 U.S.C.A. § 688, to recover damages for personal injuries allegedly sustained by him on November 5, 1952.

On the day in question the plaintiff was aboard the self-propelled motor tanker Joanne Reinauer, owned and operated by the defendant, on a voyage from Albany to Staten Island, New York. She was proceeding along the Hudson River in a southerly direction. At about 10:00 P.M. on that day, when she was approximately off Newburgh, New York, the plaintiff claims that he was caused to fall to the deck of the vessel, by reason whereof he sustained the injuries which are the subject matter of this action.

The plaintiff and defendant agree that it was dark at the time of the accident, and that the vessel was showing its regulation navigation lights, consisting of red and green lights on the port and starboard sides, respectively, together with a white light on both the foremast and the aftermast. Those lights, it was stipulated, provided no illumination for the deck areas of the vessel. However, those were the only lights permitted a vessel under way pursuant to inland water rules, Title 33 U.S.C.A. § 172, and the pilot rule following Rule 14.

There is a sharp dispute, however, between the plaintiff and defendant as to the manner in which the accident happened. The plaintiff claims that he was ordered to pump the ballast from the tanks into which it had been placed when she left Albany. He accomplished this, he said, by laying a heavy rubber hose which was connected to a valve, which in turn was connected to the tanks, across the deck to the edge thereof, from which point the contents of the tanks were discharged into the river. The hose was connected to large pipe fittings located

some ten or twelve feet forward of the pilot house, on the starboard side of the vessel, all shown on the photographs received in evidence as defendant's exhibits "A" and "B". The plaintiff testified that in the process of pumping a certain amount of spray and an oily residue of the contents of the tanks was blown back across the deck, causing it to become slick and slippery, and that as a result thereof he fell and sustained serious injuries.

The defendant, on the other hand, denies that the tanks were being flushed out in this manner. Its principal witness, Bernard J. Manken, who was in charge of the vessel, testified that at the time of the accident the water ballast which had been taken on at Albany was being discharged through seacocks located in her bottom. He testified further that he was in the pilot house at the time and that the rubber hose in question was not then in use, and was not stretched across the deck, as described by the plaintiff, but lay parallel to the raised portion of the deck, as illustrated in the photographs hereinabove referred to as defendant's exhibits "A" and "B", that he saw the plaintiff walk into the hose connection at the junction of the manifold and the hose, and then fall backward, landing on the deck.

Because of the sharp conflict in the evidence it becomes necessary to scrutinize the testimony of the witnesses with particular regard to their demeanor, manner of testifying, interest in the outcome of the case and the reasonableness of their versions of the occurrence.

Only one witness was called by each side to testify as to the manner in which the accident happened, the plaintiff in his own behalf and the aforesaid Bernard J. Manken for the defendant. The plaintiff was verbose, unresponsive, equivocal, contradictory, and argumentative. His answers to questions, especially on cross-examination, were vague, indefinite, and in many instances contradictory of his testimony at an examination before trial. Confronted with such discrepancies he offered inadequate and unconvincing reasons therefor. Illustrative of his evasiveness and equivocation was his testimony, on cross-examination, as to the place where he fell. Five pages of the transcript of the minutes were required to record the efforts of the defendant's counsel to induce the plaintiff to mark on an exhibit in the case (a photograph) the place on the deck where he fell. An illustration of the unreliability of his testimony was his explanation of his failure to use the flashlight, which he held in his hand at the time of the accident, but which was not lit. Although it had been supplied to him by the defendant, he stated that he had been ordered *not* to use it because its beam would shine in the eyes of the navigators in the wheelhouse. If the plaintiff had used the flashlight and had properly directed its beam so as to light his way as he was proceeding along the deck prior to the accident the scope of the beam would then have been restricted to the deck and could not have shone into the wheelhouse.

Manken, who was no longer in the employ of the defendant at the time of the trial, impressed me very favorably. His testimony was clear, forthright and convincing. His answers, both on direct and cross-examination, were straightforward and responsive. I believed his version of the occurrence. It is my opinion that the injuries sustained by the plaintiff were occasioned by the careless and negligent manner in which he performed his work, including, but not limited to, his failure to use the flashlight, resulting in his collision with the hose connection and his fall to the deck. I do not believe that the accident was caused by the accumulation of oil slick on the deck, as testified to by the plaintiff. Nor do I believe that the tanks were emptied in the manner he stated. I believe that the seacocks were used for that purpose.

Accordingly, I find that the defendant was not negligent, but that the accident was caused solely by the plaintiff's negligence. Judgment is therefore rendered in favor of the defendant dismissing the complaint.

Submit findings of fact, conclusions of law and decree in conformity herewith.